142 P.3d 722 (2006)
The PEOPLE of the State of Colorado, Petitioner
v.
Robin M. JOHNSON, Respondent.
No. 05SC408.
Supreme Court of Colorado, En Banc.
September 11, 2006.
John Suthers, Attorney General, Catherine P. Adkisson, Assistant Solicitor General, Appellate Division, Denver, Colorado, Attorney for Petitioner.
Meier & Giovanini, Doug Meier, Lakewood, Colorado, Attorney for Respondent.
Justice RICE delivered the Opinion of the Court.
We granted certiorari to review the court of appeals' conclusion in People v. Johnson, 121 P.3d 285 (Colo.App.2005), that the rule of Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), applies to cases that were pending on direct review at the time the Supreme Court decided Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). We reverse the court of appeals and hold that Blakely applies only to those cases that were pending on direct review at the time Blakely was decided.
Applying the United States Supreme Court's retroactivity analysis to the instant case, we conclude that Blakely announced a new constitutional rule of criminal procedure after Respondent Johnson's conviction became final, that the rule does not fall under *723 the exception to the general rule of nonretroactivity of new procedural rules, and that Johnson is therefore not entitled to the benefit of the Blakely rule. We remand for proceedings not inconsistent with this opinion.

I. Facts and Procedural History
Respondent Robin Johnson pleaded guilty to one count of theft in two separate cases. One case charged her with class 3 felony theft; the other charged her with class 4 felony theft. §§ 18-4-401(1)(a), (2)(c), (2)(d), C.R.S. (2005). On December 20, 2000, Johnson was convicted of the theft offenses based on her pleas and sentenced to twenty-five years in community corrections.
Nearly one year into her sentence, Johnson was rejected from the community corrections program for violation of program rules. As a result, on December 19, 2001, the trial court revoked her community corrections sentence and sentenced her to a term of twenty-four years' imprisonment in the Department of Corrections for the class 3 felony and twelve years' imprisonment in the Department of Corrections for the class 4 felony. The court ordered the sentences to run concurrently.
Each of these sentences was in the aggravated sentencing range created by section 18-1.3-401(6), C.R.S. (2005). See § 18-1.3-401(6) (authorizing trial court to impose a sentence of up to twice the maximum in the presumptive range upon the trial court's finding of aggravating circumstances); § 18-1.3-401(1)(a)(V)(A) (listing the presumptive sentencing range for class 3 felonies as four to twelve years and the presumptive range for class 4 felonies as two to six years).
Johnson filed a number of Crim. P. 35 postconviction motions, including a Crim. P. 35(c) motion to vacate her judgment of conviction and sentence because she received ineffective assistance of counsel. The trial court denied these motions, and Johnson appealed to the court of appeals.
The court of appeals, in People v. Johnson, 121 P.3d 285 (Colo.App.2005), vacated Johnson's sentence and remanded to the trial court for resentencing. Id. at 288. The court of appeals' decision was based on the United States Supreme Court's 2004 decision in Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), which struck down a Washington State sentence that was increased based on the trial court's finding that the defendant committed the offense with "deliberate cruelty." Id. at 299-300, 124 S.Ct. 2531. After raising the Blakely issue sua sponte, the court of appeals requested supplemental briefing, which the parties provided.
The court of appeals determined that the rule of Blakely should apply retroactively to all cases that were pending on direct review at the time the Supreme Court decided Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Johnson, 121 P.3d at 287. As Johnson's case was still pending at the time the Supreme Court decided Apprendi, the court of appeals held that the Blakely rule should govern her postconviction appeal. Id. at 286. Applying Blakely, the court vacated Johnson's sentence and remanded for resentencing. Id. at 288. The People petitioned this court for a writ of certiorari, arguing that Johnson should not receive the benefit of the Blakely rule because her case was final when Blakely was announced. We granted the petition[1] and now reverse the court of appeals and remand for proceedings not inconsistent with this opinion.

II. Analysis
In Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490, 120 S.Ct. 2348. Four years later, in Blakely v. Washington, 542 U.S. 296, 124 *724 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the Court held that "the `statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Id. at 303, 124 S.Ct. 2531 (emphasis in original). The sole issue presented by this case is whether defendants whose cases were final at the time Blakely was announced may assert Blakely challenges to their convictions. We conclude that they may not.
In Lopez v. People, 113 P.3d 713 (Colo. 2005), the case in which this court first applied Blakely to Colorado's sentencing scheme, we began our analysis by noting that "[w]e review the conviction in this case because Lopez's case was pending on direct appeal when Blakely was announced and he is therefore entitled to its retroactive application." Lopez, 113 P.3d at 716. This statement implies, without deciding, that Blakely does not apply to cases that were no longer on direct review when Blakely was decided. Today we confirm the implication of our statement in Lopez and join the overwhelming majority of courts that have addressed this issue[2] by holding that the Blakely rule is not to be applied to cases that were final at the time Blakely was announced.
The United States Supreme Court has held that new constitutional rules of criminal procedure generally do not apply to cases that became final before the new rule was announced. Schriro v. Summerlin, 542 U.S. 348, 352, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004); Teague v. Lane, 489 U.S. 288, 310, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). There is a narrow exception to this general rule for "watershed rules of criminal procedure." Summerlin, 542 U.S. at 352, 124 S.Ct. 2519; Teague, 489 U.S. at 311, 109 S.Ct. 1060. We recently adopted the Teague analysis for determining whether a new constitutional rule of criminal procedure applies to cases on collateral review. Edwards v. People, 129 P.3d 977, 983 (Colo.2006).
For the reasons explained below, we determine that Blakely announced a new rule of criminal procedure after Johnson's conviction became final, that Teague's exception for "watershed rules of criminal procedure" does not apply, and that the Blakely rule therefore does not apply to Johnson's case. Thus, we reverse the court of appeals' decision.

A. Blakely Announced a Procedural Rule
New substantive constitutional rules generally apply to cases on direct and collateral review. Summerlin, 542 U.S. at 351, 124 S.Ct. 2519.[3] New procedural rules, on the other hand, apply only to those cases that survive the three-part inquiry set forth in Teague v. Lane. See Beard v. Banks, 542 U.S. 406, 411, 124 S.Ct. 2504, 159 L.Ed.2d 494 (2004); Teague, 489 U.S. at 310, 109 S.Ct. 1060; Edwards, 129 P.3d at 983. Therefore, our analysis begins with the question of whether Blakely announced a substantive or procedural rule.
*725 In Summerlin, the United States Supreme Court described the difference between substantive and procedural rules. Substantive rules, the Court explained, "alter[ ] the range of conduct or the class of persons that the law punishes." Summerlin, 542 U.S. at 353, 124 S.Ct. 2519. Procedural rules "regulate only the manner of determining the defendant's culpability." Id. (emphasis in original). Summerlin addressed the retroactivity of Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), which applied Apprendi in holding that a jury, and not a judge, must find the existence of aggravating circumstances that warrant the death penalty. Observing that Ring "did not alter the range of conduct Arizona law subjected to the death penalty" but rather "altered the range of permissible methods for determining whether a defendant's conduct is punishable by death," the Summerlin Court held that rules like the one announced in Ring "are prototypical procedural rules." Summerlin, 542 U.S. at 353, 124 S.Ct. 2519.
Summerlin compels the conclusion that Blakely announced a procedural rule. Like Ring, Blakely did not alter the range of conduct that may be punished, but instead regulated the manner in which such conduct was to be proved. See Summerlin, 542 U.S. at 353, 124 S.Ct. 2519. Despite the clear parallels between Blakely and Ring, Johnson maintains that Blakely is a substantive rule. Johnson's argument seizes upon the fact that Blakely changed both the factfinder and the burden of proof, whereas Ring changed only the factfinder. (The law at issue in Ring required the judge to find the existence of aggravating factors beyond a reasonable doubt. Ring, 536 U.S. at 597, 122 S.Ct. 2428). Johnson argues that "[b]ecause there exists a risk that conduct proved under the preponderance standard was not punishable under the higher [beyond-a-reasonable-doubt] standard, the rule in Blakely warrants retroactive application as a new substantive rule."
Johnson's argument fails to distinguish her case from Summerlin because the "risk" to which Johnson refers comes about because of the procedural change that Blakely requires. Substantive rules "place[ ] `certain kinds of primary, private individual conduct beyond the power of the criminal lawmaking authority to proscribe.'" Teague, 489 U.S. at 311, 109 S.Ct. 1060 (quoting Mackey v. United States, 401 U.S. 667, 692, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring in part and dissenting in part)). Blakely, by contrast, changes the manner in which punishable conduct is to be proved. Blakely is, therefore, like Ring, a "prototypical procedural rule[ ]." Summerlin, 542 U.S. at 353, 124 S.Ct. 2519.

B. The Teague Test
Having determined that Blakely announced a procedural rule, we apply the three-step test of Teague v. Lane to determine whether Blakely applies to Johnson's case. Beard, 542 U.S. at 411, 124 S.Ct. 2504; Edwards, 129 P.3d at 983. The first step of the Teague analysis is to determine when Johnson's conviction became final. Beard, 542 U.S. at 411, 124 S.Ct. 2504. Next, Teague requires us to "assay the legal landscape" as of the date Johnson's conviction became final "and ask whether the Constitution, as interpreted by the precedent then existing," compelled the Blakely rule. Id. at 411, 413, 124 S.Ct. 2504. We must, in other words, "decide whether the rule is actually `new.'" Id. at 411, 124 S.Ct. 2504. Finally, we must determine if the rule falls under an exception to the general rule of nonretroactivity of procedural rules. Id.

1. Finality
"State convictions are final `for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied.'" Beard, 542 U.S. at 411, 124 S.Ct. 2504 (quoting Caspari v. Bohlen, 510 U.S. 383, 390, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994)); Edwards, 129 P.3d at 983. The parties here agree that Johnson's conviction was final before June 24, 2004, the date Blakely was announced. Therefore, we find it unnecessary to determine the precise date on which Johnson's conviction became final for purposes of this appeal. It suffices to note that *726 Johnson was convicted in December 2000, her sentence was revoked in 2001, and the record shows no direct appeals on her part.

2. New Rule
The next step of the Teague analysis is to "assay the legal landscape" as of the time Johnson's conviction became final and "ask whether the rule later announced [in Blakely] was dictated by then-existing precedent." Beard, 542 U.S. at 413, 124 S.Ct. 2504 (emphasis in original) (internal quotation marks omitted); Edwards, 129 P.3d at 984. We make this inquiry because no retroactivity analysis would be necessary if Blakely "simply applied a well-established constitutional principle to govern a case which [was] closely analogous to those which ha[d] been previously considered in the prior case law." Yates v. Aiken, 484 U.S. 211, 216, 108 S.Ct. 534, 98 L.Ed.2d 546 (1988) (quoting Desist v. United States, 394 U.S. 244, 263-64, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969) (Harlan, J., dissenting)).
To determine whether the Blakely rule was dictated by then-existing precedent, we inquire "whether the rule ... was apparent to all reasonable jurists." Beard, 542 U.S. at 413, 124 S.Ct. 2504. Blakely was not apparent to all reasonable jurists. On the contrary, a great many reasonable jurists failed to foresee the Blakely rule. When the United States Court of Appeals for the Ninth Circuit addressed the issue of whether Blakely was apparent to all reasonable jurists, that court observed that "[e]very circuit court of appeals that addressed the question presented in Blakely reached the opposite conclusion from the rule subsequently announced by the Supreme Court." Schardt v. Payne, 414 F.3d 1025, 1035 (9th Cir.2005) (compiling cases).
Moreover, in her dissenting opinion in Blakely, Justice O'Connor surveyed the pre-Blakely case law and concluded that prior to Blakely, "only one court had ever applied Apprendi to invalidate application of a guidelines scheme." Blakely, 542 U.S. at 320 n. 1, 124 S.Ct. 2531 (O'Connor, J., dissenting). Indeed, the fact that Justice O'Connor was one of four dissenters in Blakely is itself a powerful rejection of the argument that the rule in that case was apparent to all reasonable jurists. See Beard, 542 U.S. at 415-16, 124 S.Ct. 2504 (noting that there was "no need to guess" as to whether a rule announced in a case was apparent to all reasonable jurists where four justices dissented in the case).[4]
Therefore, we conclude that Blakely announced a "new rule" for purposes of retroactivity analysis.

3. Exception to Teague

The final step in our analysis is to determine whether Blakely falls under the exception to the general rule of nonretroactivity of new rules of criminal procedure. This exception is reserved for "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." Beard, 542 U.S. at 417, 124 S.Ct. 2504 (quotation marks omitted); Edwards, *727 129 P.3d at 986. The Supreme Court has "repeatedly emphasized the limited scope" of this exception, "explaining that it is clearly meant to apply only to a small core of rules requiring observance of those procedures that ... are implicit in the concept of ordered liberty." Beard, 542 U.S. at 417, 124 S.Ct. 2504 (internal quotation marks omitted). We conclude that the Blakely rule does not fall under the exception for "watershed rules of criminal procedure."
The Supreme Court's recent decision in Summerlin guides our analysis of whether Blakely is a "watershed rule." Summerlin addressed the retroactivity of the constitutional rule announced in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). As discussed in Part II.A., above, Ring applied Apprendi in holding that a jury, and not a judge, must find the facts that justify a death sentence. The Summerlin Court declined to accord retroactive effect to Ring, holding that Ring announced a new procedural rule that did not qualify for the "watershed rule" exception. Summerlin, 542 U.S. at 356, 124 S.Ct. 2519.
In holding that Ring  which applied the Sixth Amendment's jury-trial guarantee to the proceedings that determine whether a convicted person will receive a term of imprisonment or the death penalty  is not to be applied retroactively, the Supreme Court strongly suggested that the procedural protections of Blakely are not to be applied retroactively. Indeed, this is exactly the conclusion reached by a number of courts. See Varela v. United States, 400 F.3d 864, 867 (11th Cir.2005) ("While neither this Court nor the Supreme Court has addressed the retroactivity of Blakely ... the Supreme Court's recent decision in Schriro v. Summerlin is essentially dispositive."); McReynolds v. United States, 397 F.3d 479, 480 (7th Cir.2005) (concluding that Summerlin "is all but conclusive on the point" of whether United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), which applied Apprendi and Blakely to the federal Sentencing Guidelines, is to be applied retroactively).
Johnson distinguishes Summerlin by noting that the sentencing scheme that the Court addressed in Ring and Summerlin required judges to find the factors that warrant the death penalty beyond a reasonable doubt. Therefore, as the Summerlin Court itself noted, the retroactivity of Apprendi's beyond-a-reasonable-doubt requirement was not an issue in Summerlin. See Summerlin, 542 U.S. at 351 n. 1, 124 S.Ct. 2519. We agree that the Supreme Court has not expressly addressed the retroactivity of Blakely's holding that the jury must find the existence of sentencing facts beyond a reasonable doubt. However, we are persuaded that Blakely's beyond-a-reasonable-doubt requirement is no more "watershed" than its alteration of the finder of fact.
First, the "watershed" exception applies to rules that are "central to an accurate determination of innocence or guilt." Beard, 542 U.S. at 417, 124 S.Ct. 2504. Because Blakely alters sentencing procedures, it is difficult to conclude that it is "central to an accurate determination of innocence or guilt." Second, several federal courts of appeals have held that Apprendi, which altered both the factfinder and the burden of proof, and which was the basis for Blakely, did not announce a "watershed rule." See Schardt v. Payne, 414 F.3d 1025, 1036 (9th Cir.2005) (listing cases).
Third, although the Supreme Court has not directly addressed whether Apprendi's burden-of-proof requirement is to be applied retroactively, the Court's post-Apprendi cases suggest that it is not. Since Apprendi, the Court has twice stated that "it is unlikely that any . . . watershed rules ha[ve] yet to emerge." Tyler v. Cain, 533 U.S. 656, 667 n. 7, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001) (internal quotation marks omitted); Summerlin, 542 U.S. at 352, 124 S.Ct. 2519 ("This class of rules is extremely narrow, and it is unlikely that any . . . ha[s] yet to emerge.") (internal quotation marks omitted). The fact that the Court made these statements after Apprendi held that facts that increase a sentence beyond the statutory maximum must be proved to a jury beyond a reasonable doubt, see Apprendi, 530 U.S. at 490, 120 S.Ct. 2348, strongly suggests that the Court does not consider Apprendi to be a watershed rule. If Apprendi does not qualify for the "watershed" exception, it is difficult to *728 understand how Blakely, which applies Apprendi's Sixth Amendment holding, could qualify.

III. Conclusion
For the above reasons, we conclude that Blakely announced a new constitutional rule of criminal procedure after Johnson's conviction became final, that Teague's exception for "watershed rules of criminal procedure" does not apply, and that the Blakely rule therefore does not apply to Johnson's case. The court of appeals erred in considering the Blakely rule when it reviewed Johnson's postconviction motions. For this reason, we reverse the court of appeals and remand for proceedings not inconsistent with this opinion.
Justice EID does not participate.
NOTES
[1] The issue on which we granted certiorari is "[w]hether the court of appeals erred in holding that Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), is retroactive to the date Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) was announced."
[2] See, e.g., United States v. Price, 400 F.3d 844, 849 (10th Cir.2005) (holding that Blakely does not apply retroactively to convictions that were final at the time the Supreme Court decided Blakely); Schardt v. Payne, 414 F.3d 1025, 1038 (9th Cir.2005) (same); United States v. Morris, 429 F.3d 65, 72 (4th Cir.2005) (same); Gerrish v. United States, 353 F.Supp.2d 95, 96 (D.Me.2005); United States v. Johnson, 353 F.Supp.2d 656, 657-58 (E.D.Va.2005); United States v. Stoltz, 325 F.Supp.2d 982, 987 (D.Minn.2004); Morris v. United States, 333 F.Supp.2d 759, 769 (C.D.Ill. 2004); State v. Houston, 702 N.W.2d 268, 271 (Minn.2005) (same); State v. Evans, 154 Wash.2d 438, 114 P.3d 627, 633 (2005). By contrast, the court of appeals' opinion in the instant case finds very little support in the case law. Indeed, another panel of the court of appeals has expressly disagreed with the Johnson panel's holding. See People v. Wenzinger, No. 04CA2322, 2006 WL 1493802, at *3, ___ P.3d ___, ___ (Colo.App. June 1, 2006).
[3] We note that previous decisions of this court, as well as the United States Supreme Court, have referred to rules of this type as falling under an exception to Teague's general rule of nonretroactivity of new constitutional rules of criminal procedure. See Edwards v. People, 129 P.3d 977, 986 (Colo.2006); Horn v. Banks, 536 U.S. 266, 271, and n. 5, 122 S.Ct. 2147, 153 L.Ed.2d 301 (2002). Following the Supreme Court's most recent pronouncements on this issue, we refer to these rules as "substantive rules not subject to [Teague's] bar" rather than as exceptions to Teague. See Schriro v. Summerlin, 542 U.S. 348, 352 n. 4, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004); Beard v. Banks, 542 U.S. 406, 417 n. 7, 124 S.Ct. 2504, 159 L.Ed.2d 494 (2004).
[4] Johnson argues that the dissenters in Blakely agreed that Apprendi dictated Blakely and that they dissented only because they did not believe that the Sixth Amendment required Apprendi. In support of this argument, Johnson directs us to dissenting opinions in Apprendi that suggest that Apprendi's reach would be broad. See, e.g., Apprendi, 530 U.S. at 543-44, 120 S.Ct. 2348 (O'Connor, J., dissenting) (noting that "one suspects that the constitutional principle underlying [the majority's] decision is more far reaching," and that this principle would apply "to all determinate-sentencing schemes in which the length of a defendant's sentence within the statutory range turns on specific factual determinations (e.g. the federal Sentencing Guidelines)"). However, from all that appears from the dissenting opinions in Blakely, the dissenters did disagree with the majority's conclusion that Apprendi mandated Blakely. See Blakely, 542 U.S. at 320, 124 S.Ct. 2531 (O'Connor, J., dissenting) ("Washington's Sentencing Reform Act did not alter the statutory maximum sentence to which petitioner was exposed."); id. at 325, 124 S.Ct. 2531 ("Indeed, the `extraordinary sentence' provision struck down today is as inoffensive to the holding of Apprendi as a regime of guided discretion could possibly be."); id. at 346, 124 S.Ct. 2531 (Breyer, J., dissenting) ("Until now, I would have thought the Court might have limited Apprendi so that its underlying principle would not undo sentencing reform efforts."). Moreover, the fact that four justices dissented from the Sixth Amendment principles announced in Apprendi and reiterated their objections to these principles in Blakely severely undermines the argument that Blakely merely applied a "well-established constitutional principle."